UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD KELLY, | : |
|     *Plaintiff*, | : |
| | : |
| v. | : |
| | :   Case No. 3:22cv798 (MPS) |
| | : |
| WARDEN OF CORRIGAN | : |
| CORRECTIONAL, et al, | : |
|     *Defendants*. | : |

## INITIAL REVIEW ORDER

The plaintiff, Donald Kelly, is a sentenced inmate currently in the custody of the Connecticut Department of Correction ("DOC") housed at Cheshire Correctional Institution.[1] He has commenced this civil rights action under 42 U.S.C. § 1983 as a *pro se* plaintiff who is now proceeding *in forma pauperis*. ECF Nos. 1, 7. He alleges constitutional claims arising from his conditions of confinement at Corrigan-Radgowski Correctional Center ("Corrigan") while he was an unsentenced detainee. He seeks damages against the Corrigan Warden, Unit Manager Warrick, Correction Officer Skeleton, Correction Officer Lazzo, Correction Officer Dulaire, Correction Officer Silva, and Lieutenant St. Jean.[2] *Id.*

---

[1] Kelly was sentenced on November 8, 2021 to a term of two years and six months. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=435008.

[2] Kelly has not specified whether he sues defendants in their individual or official capacities. The Court construes his complaint as asserting his claims only against defendants in their individual capacities. Any official capacity claims for damages against defendants who are state employees would be dismissed as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because Kelly is no longer housed at Corrigan, any official capacity claims for declaratory and injunctive relief based on his past conditions at Corrigan would be dismissed as moot. *See Shand v. Correction Officer Parsons*, No. 3:20CV28(CSH), 2022 WL 2981593, at *11 (D. Conn. July 28, 2022).

1

For the reasons that follow, the Court will permit Kelly to proceed on Fourteenth Amendment claims against Correction Officers Skeleton, Lazzo, Dulaire, and Silva, and Lieutenant St. Jean in their individual capacities for damages.

## I.     Legal Standard

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-102 (2d Cir. 2010).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a pro se complaint, a pro se complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.     FACTS

On August 13, 2021, Kelly was transferred from the Echo Unit to the Bravo Unit Cell 115 at Corrigan. Compl. at 2. As soon as he entered Cell 115, Kelly noticed the smell of urine coming from a large puddle by the broken toilet. *Id.* When he entered the cell, he noted feces and urine on the wall, moldy food in the corner, ants, dirt, and dust. *Id.*

Kelly informed Correction Officers Skeleton, Lazzo, Dulaire and Silva ("Correction Officer Defendants") about the cell conditions and that he could be placed in one of the open cells (there were more than twelve cells open at the time). *Id.* The Correction Officer Defendants laughed and ignored "his plea." *Id.*
They responded in "vulgar and unprofessional language." *Id.*

Kelly repeatedly asked the Correction Officer Defendants for cleaning supplies but was ignored. *Id.* He informed them that the toilet was leaking but was ignored. *Id.* When he asked them to move him to a different cell, they responded, "This is not a hotel!" *Id.* at 3.

During the night of August 13, Correction Officer Silva gave Kelly a blanket and told him to put it around the toilet. *Id.* After the leak from the toilet soaked through the blanket, Correction Officer Skeleton provided him with a mop and a new blanket. *Id.*

When Silva asked why he could not be placed in a different open cell, Officer Skeleton responded that nothing could be done and that there was about to be a shift change. *Id.*

On Saturday, August 14, Kelly's housing unit had a lockdown. *Id.* Kelly informed Lieutenant St. Jean (the weekend acting unit manager) about the conditions existing prior to his move into Cell 115; he also showed him the soaked blanket and the toilet that was leaking uncontrollably. *Id.* Lieutenant St. Jean shrugged his shoulders and stated that he could do nothing until Monday. *Id.* Kelly explained that, as a lieutenant and unit manager, St. Jean could move

3

him to one of the open cells due to the inhumane conditions of Cell 115, but St Jean told him not to tell him how to do his job and to wait until Monday. *Id.*

Later that night, Kelly was descending his bunk to go use the bathroom when he slipped and fell due to the puddle of water and urine. *Id.* As a result of his fall, he slammed onto the floor, hitting his back and head. *Id.* He was taken by stretcher to the medical unit where he stayed for several days. *Id.*

At present, Kelly receives treatment for his back, sprained and pulled muscles, and damaged nerves. *Id.*

### III.     DISCUSSION

Kelly claims that Defendants subjected him to inhumane conditions and acted with deliberate indifference to his health and safety. Compl. at 3.

Because Kelly's claims concern his conditions as an unsentenced prisoner, his claims are governed by the Fourteenth Amendment's Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Gilliam v. Black*, No. 3:18CV1740(SRU), 2019 WL 3716545, at *7 (D. Conn. Aug. 7, 2019) (construing conditions of confinement claim of convicted—but not sentenced plaintiff—under the Fourteenth rather than Eighth Amendment.).

**Fourteenth Amendment**

To establish a constitutional violation under the Eighth or Fourteenth Amendment based upon inhumane conditions, the plaintiff must demonstrate, that the deprivation was "sufficiently serious." *Rogers v. Faucher*, No. 3:18CV1809(JCH), 2019 WL 1083690, at *4 (D. Conn. Mar. 7, 2019) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017)). Prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety'" or expose prisoners to conditions that may pose an unreasonable risk of

serious damage to their current or future health. *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). To meet the objective element of a claim for deliberate indifference to his health or safety, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a basic life necessity or "a substantial risk of serious harm" to his health. *Farmer v Brennan*, 511 U.S. 825, 834 (1994).

In addition, under the Fourteenth Amendment, the detainee must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety." *Rogers*, 2019 WL 1083690, at *4 (quoting *Darnell*, 849 F.3d at 35).

Unsanitary Conditions of Confinement

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation. Unsanitary conditions have satisfied the objective element where "the area in front of a prisoner's cell is filled with human feces, urine, and sewage water, … a prisoner's cell is fetid and reeking from the stench of the bodily waste from the previous occupants, … a prisoner's cell floor has urine and feces splattered on the floor." *McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020) (summary order) (citations and quotations omitted). The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and has instructed that a unconstitutional unsanitary

5

conditions claim "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste).

For initial pleading purposes, Kelly has sufficiently alleged a plausible objectively serious inhumane condition of confinement due to his being housed in a cell that presented the combination of urine, feces, moldy food, ants, dust, dirt, soaked blankets with liquid from the uncontrollable leaky toilet, and no cleaning supplies. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (holding that plaintiff stated a § 1983 claim by pleading mice were constantly entering his cell and he was subjected to human feces, urine and sewage water in front of cell).

With respect to the subjective element, Kelly has sufficiently alleged that Correction Officers Skeleton, Lazzo, Dulaire, and Silva, and Lieutenant St. Jean were aware of the cell conditions but refused to take action to mitigate his exposure to the unsanitary conditions in his cell. Accordingly, Kelly may proceed on his Fourteenth Amendment claim of deliberate indifference against Correction Officers Skeleton, Lazzo, Dulaire, and Silva, and Lieutenant St. Jean for damages in their individual capacities.

<u>Slip and Fall</u>

Courts in this Circuit routinely find that an accident, even if arising from a risky condition, does not rise to the level of a sufficiently serious deprivation. *Gutierrez-Pinto v. Annucci*, No. 20CV4490(CS), 2022 WL 523628, at *5 (S.D.N.Y. Feb. 22, 2022) (citing cases). The Second Circuit has also recognized that "slip-and-fall claims are seldom viewed as rising to "constitutional dimension," although "exceptional circumstances" could elevate the danger of a condition beyond that typically "presented by a slippery sidewalk or a wet floor." *McCray v. Lee*,

963 F.3d 110, 115, 120 (2d Cir. 2020) (observing that inmate had not made "any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor."); *see Abernathy v. Comm'r of Correction*, No. 3:20CV628(VAB), 2021 WL 1240018, at *7 (D. Conn. Apr. 2, 2021) (noting allegations that correctional staff ignored waxed wet floor that was extremely slippery suggested an exceptional circumstance involving a violation of contemporary standards of decency). *See also Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.").

Kelly has alleged that he slipped on a puddle of urine and water caused by an uncontrollable leaking toilet surrounded by wet blankets that the Correctional Officer Defendants had known about for approximately two days. For initial pleading purposes, Kelly's allegations suggest exceptional circumstances due to the increased risk of harm posed to Kelly by prolonged failure to provide effective remediation for the leaking toilet in his cell. Accordingly, the Court will permit this claim to proceed for further development against Correction Officers Skeleton, Lazzo, Dulaire, and Silva, and Lieutenant St. Jean in their individual capacities.

<u>Unit Manager Worrick and Warden Foote</u>

Kelly's complaint identifies Worrick as the unit manager of Bravo and Foote (who is not named in the case caption) as the Corrigan Deputy Warden[3] at the time relevant to this action. Compl. at 2. Kelly has also named in the case caption the Corrigan Warden.

---

[3] Under Rule 10(a) of the federal Rules of Civil Procedure, a complaint must include the names of all parties in the case caption. *See* Fed. R. Civ. P 10(a) ("title of the complaint must name all the parties"). However, the court considers for purposes of this initial review that Kelly is attempting to assert claims against Deputy Warden Foote.

7

Kelly has not, however, alleged any plausible section 1983 claims against Worrick, the Corrigan Warden, or Deputy Warden Foote (even assuming he is a proper defendant in this action).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up). That is true for supervisory officials, too. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (explaining that to "hold a state official liable under [section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Kelly has not alleged any facts to suggest that Worrick, the Corrigan Warden, or Deputy Warden Foote was aware of but failed to provide any remedial measures to mitigate the risk of serious harm posed to Kelly by the conditions in Cell 115. As Kelly's complaint raises no plausible suggestion of deliberate indifference by Worrick, the Corrigan Warden, or Deputy Warden Foote, the court dismisses the claims for damages against these defendants.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Kelly's Fourteenth Amendment claims against Correction Officers Skeleton, Lazzo, Dulaire, and Silva, and Lieutenant St. Jean in their individual capacities for damages. However, the Court DISMISSES his Fourteenth Amendment claims against Defendants Worrick, the Corrigan Warden, and Deputy Warden Foote without prejudice.

Kelly may file, within thirty days of this order, an amended complaint to cure the deficiencies identified in order. He is advised that any amended complaint will completely

replace the prior complaint, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. He must also name in the case caption all defendants against whom he asserts claims.

(2) The clerk shall verify the current work address of Correction Officers Skeleton, Lazzo, Dulaire, and Silva, and Lieutenant St. Jean with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 9th day of August 2022, at Hartford, Connecticut.